925 P.2d 515

**Charles P. SHOPE, individually and as personal representative of the Estate of Joseph Shope, Plaintiff–Appellee,**

v.

**STATE FARM INSURANCE COMPANY, Defendant–Appellant.**

**No. 23155.**

Supreme Court of New Mexico.

Oct. 7, 1996.

Guebert & Yeomans, P.C., Terry R. Guebert, Don Bruckner, Albuquerque, for Defendant–Appellant.

David L. Plotsky Law Office, David L. Plotsky, Albuquerque, for Plaintiff–Appellee.

OPINION

RANSOM, Justice.

1. State Farm Insurance Company appeals from a summary judgment, on stipulated facts, granting uninsured motorist benefits to its insured, Charles P. Shope, whose son Joseph was killed by an uninsured motorist in Albuquerque, New Mexico. The district court found that the insurance con-

tract between the parties was a Virginia contract that should be interpreted under Virginia law. However, the court concluded that application of Virginia law to provisions in the insurance contract so as to deny the stacking of uninsured motorist coverage would violate New Mexico public policy. We agree with the trial court that Virginia law governs the contract in this case. Because we do not believe that application of Virginia law would violate New Mexico public policy, we reverse.

2. The Shopes lived in Albuquerque prior to August 1991. Then, Marlene Shope moved from Albuquerque to Virginia where she registered to vote and opened a checking account into which her two disability checks were directly deposited. Her husband Charles moved to Virginia in June 1992 with most of the couple's belongings. He likewise opened a savings account in Virginia and began to have his disability check directly deposited there. In January 1993 both Marlene and Charles obtained Virginia driver's licenses. Joseph moved from Albuquerque to Virginia in February 1993 to live with his parents.

3. In July 1992 the Shopes purchased a home and two automobiles in Virginia. At that time they purchased insurance covering both automobiles from a State Farm Insurance agent in Virginia. The policy provided that each vehicle had uninsured motorist coverage of $100,000 per person for bodily injury. This insurance policy included Endorsement 6520.7 Uninsured Motorist Insurance (Virginia), which provided in part as follows:

III. Limits of Liability.

Regardless of the number of . . .

(4) motor vehicles to which this insurance applies,

(a) If the schedule or declarations indicate split limits of liability, the limit of liability for bodily injury stated as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of one accident.

4. The Shope family decided to move back to New Mexico, and on January 2, 1994,

they moved into an apartment in Albuquerque. Administration of the State Farm Insurance policy was not transferred to New Mexico and the premiums continued to be paid from Marlene's account in Virginia. On January 15 Joseph was struck and killed by an uninsured motorist as he walked on a street in Albuquerque. Charles claims to be entitled to wrongful-death damages against the uninsured motorist in excess of $200,000, and that he consequently is entitled to the stacked uninsured motorist benefits of $200,000 under his policy.

5. In *State Farm Mutual Insurance Co. v. Conyers,* 109 N.M. 243, 784 P.2d 986 (1989), this Court applied the law of the state where an insurance contract was made, not the law of the state where insureds resided and where an accident occurred. The Conyers purchased insurance on one automobile while they lived in New Mexico. Later, while they lived in California, they purchased automobile insurance for at least one other car from the same State Farm agent in New Mexico. The Conyers then moved to Nevada where an accident occurred. The insurer sought, in accordance with New Mexico law, *e.g., Schmick v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 216, 223, 704 P.2d 1092, 1099 (1985), to offset against its underinsured motorist liability the amount received by the insured from the tortfeasor's insurer. This Court held that "[t]he policy of New Mexico's law governing a contract of insurance applied for and issued in this state . . . on a vehicle at least assumed to be located here and owned by an individual who declared his residence as being here, seems to us to weigh more heavily than any possibly countervailing policy that would underlie applicability of Nevada law." *Conyers,* 109 N.M. at 247–48, 784 P.2d at 990–91. We concluded that under either the rule of lex loci contractus or the principles of Restatement (Second) Conflict of Laws, New Mexico rather than Nevada law should be applied.

■ 6. Under Virginia law, stacking of insurance coverage is permitted unless clear and unambiguous language in the policy prevents it. *Goodville Mut. Casualty Co. v. Borror,* 221 Va. 967, 275 S.E.2d 625, 627 (1981); *USAA Casualty Ins. Co. v. Alexan-*

*der,* 248 Va. 185, 445 S.E.2d 145, 148 (1994). The Shopes' insurance contract clearly and unambiguously prevents stacking. The Limits of Liability provide that "[r]egardless of the number of … motor vehicles to which this insurance applies … the limit of liability for bodily injury … applicable to 'each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of one accident." The parties agree that under Virginia law the Shopes may not stack.

■ 7. State Farm correctly points out that in *United Wholesale Liquor Co. v. Brown–Forman Distillers Corp.,* 108 N.M. 467, 775 P.2d 233 (1989), we applied Kentucky rather than New Mexico law to a franchise dispute, holding that the application of Kentucky law did "not violate some fundamental principle of justice." *Id.* at 471, 775 P.2d at 237. While New Mexico public policy does favor the stacking of coverage in underinsured motorist cases, *Jimenez v. Foundation Reserve Ins. Co.,* 107 N.M. 322, 324–25, 757 P.2d 792, 794–95 (1988) ("Insurance policy clauses that prohibit stacking are particularly repugnant to public policy when the injured insured has paid separate premiums for underinsured/uninsured motorist coverage on each vehicle."), our rationale in establishing this policy did not concern fundamental principles of justice, but focused on the expectations of the insured. "Because case law in this jurisdiction repeatedly has stated the public policy which allows uninsured/underinsured motorist coverage to be stacked when separate premiums are paid for additional coverage, an insured may reasonably expect to stack coverage." *Id.* at 325, 757 P.2d at 795. The Shopes, as Virginia residents purchasing a home, cars, and insurance in Virginia, should have expected that the laws of Virginia would be applied to their various transactions.

8. The Shopes argue that the law of the place where the accident occurred should govern our analysis of their expectations of stacking, relying on *State Farm Automobile Ins. Co. v. Ovitz,* 117 N.M. 547, 873 P.2d 979 (1994). In that case this Court considered whether the law of Hawaii or of New Mexico applied when a New Mexico resident covered by an insurance contract executed in New Mexico was injured in an accident in Hawaii. We held that "in certain respects, the law of both states applies." *Ovitz,* 117 N.M. at 549, 873 P.2d at 981.

Ovitz and State Farm entered into the insurance contract in New Mexico. Thus, the law of New Mexico governs the interpretation of the contract. However, the rights and liabilities of persons injured in automobile accidents are determined under the laws of the state where the accident happened.

*Id.* (citations omitted). As a no-fault state, Hawaii has abolished tort liability arising from motor vehicle accidents occurring in that state. *Id.* at 548, 873 P.2d at 980. Ovitz sued his insurer for uninsured motorist benefits to cover non-economic losses unrecoverable under Hawaiian law. The insurance contract, however, provided that the insured must be "'legally entitled to collect' damages in order to receive benefits under the uninsured motorist provision." *Id.* at 550, 873 P.2d at 982. Because the insured was not "legally entitled to collect" non-economic damages under Hawaiian law, we found that the insured could not collect uninsured motorist benefits for non-economic loss.

■ 9. The Shopes and State Farm entered into a contract in Virginia. We have stated that the policy of New Mexico is to interpret insurance contracts according to the law of the place where the contract was executed. While we interpret New Mexico insurance contracts to avoid repugnancy in clauses that prohibit stacking of coverages for which separate premiums have been paid, this rule is one of contract interpretation that does not rise to the level of a fundamental principle of justice. Rules of contract interpretation are, of course, matters of public policy. Generally, when we determine a contract dispute by choosing to apply the law of the place where the agreement was executed, we do so in contravention of another jurisdiction's public policy favoring a different interpretation. To overcome the rule favoring the place where a contract is executed, there must be a countervailing interest that is fundamental and separate from general policies of contract interpretation.

10. As we stated in *Rodriguez v. Windsor Ins. Co.*, 118 N.M. 127, 133, 879 P.2d 759, 765 (1994):

> Despite the strength of the judicial policy ... as discussed in, *e.g., Jimenez,* 107 N.M. at 324–26, 757 P.2d at 794–96, it may be possible to give effect to a *truly* unambiguous antistacking clause, provided it plainly notifies the insured that only one premium has been charged for one insurance coverage, that the coverage provides personal accident insurance that cannot be stacked regardless of the number of vehicles covered by the policy, and that the insured should bear this feature in mind when purchasing insurance.

As we explained in *Allstate Ins. Co. v. Stone,* 116 N.M. 464, 863 P.2d 1085 (1993), concerning the "repugnancy" of irreconcilable exclusionary language, "when 'an exclusionary clause simply nullifies the grant' of coverage, this Court will 'refuse to apply the clause that deprives the insured of the insurance coverage which the insured reasonably understood was afforded by the policy.'" *Id.* at 467, 863 P.2d at 1088 (quoting *Federal Ins. Co. v. Century Fed. Sav. & Loan Ass'n,* 113 N.M. 162, 169, 824 P.2d 302, 309 (1992)). In *Stone,* we held that when the clear and unambiguous language purporting to preclude stacking is irreconcilable with the apparent grant of coverage the exclusionary language is given no effect. *Id.* Whether stacking is proper is thus a question of contract interpretation, not one of fundamental interests, and therefore governed by Virginia law. For these reasons we reverse.

**IT IS SO ORDERED.**

FRANCHINI and MINZNER, JJ., concur.