2006-NMCA-091

140 P.3d 1111

**Nusret DEMIR, Plaintiff–Appellant,**

v.

**FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

**No. 26,040.**

Court of Appeals of New Mexico.

June 28, 2006.

Damon B. Ely, Law Offices of Daymon B. Ely, Thomas J. Budd Mucci, Mucci Law, Albuquerque, NM, for Appellant.

Daniel J. O'Brien, Lawrence M. Glenn, O'Brien & Ulibarri, P.C., Albuquerque, NM, for Appellee.

## OPINION

WECHSLER, Judge.

{1} Plaintiff Nusret Demir appeals from an order granting summary judgment in favor of Defendant Farmers Texas County Mutual Insurance Company. There are two issues on appeal. First, Plaintiff contends that the district court erred in applying Texas law to interpret his insurance contract with Farmers. Second, Plaintiff argues that even if Texas law applies, New Mexico courts should not enforce that law because it conflicts with our own public policy. We agree that Texas law is inapplicable because it contravenes New Mexico's public policy and we reverse.

## BACKGROUND

{2} Plaintiff is a resident of Texas, and Farmers is domiciled in Texas. Farmers issued an insurance contract to Plaintiff in Texas. It is undisputed that Plaintiff was driving in New Mexico when he swerved to avoid another vehicle, resulting in a single-car accident. The driver of the other vehicle is unknown and no physical contact between the two vehicles occurred.

{3} Farmers denied Plaintiff's claim for uninsured motorist benefits because a provision in the policy and Texas law require physical contact between the covered vehicle and the unknown vehicle. Plaintiff brought this suit in New Mexico district court seeking to recover under his policy on two theories. First, Plaintiff argued that New Mexico law determined his right to recover under the policy. Second, Plaintiff argued that even if Texas law would normally apply, it did not apply because it was contrary to New Mexico's public policy of protecting drivers. Farmers moved for summary judgment. The district court found that Texas law applied, that Texas law permitted a restriction on recovery such as that in Plaintiff's policy,

and that policy of the state of Texas was designed to prevent fraud. It granted Farmers' motion for summary judgment.

**STANDARD OF REVIEW**

{4} We review the grant of summary judgment de novo, viewing the evidence in the light most favorable to Plaintiff. *See Gormley v. Coca–Cola Enters.,* 2005–NMSC–003, ¶ 8, 137 N.M. 192, 109 P.3d 280. Summary judgment is proper if there are no genuine issues of material fact and Farmers is entitled to judgment as a matter of law. *See id.*

**CHOICE OF LAW**

{5} The parties do not contest that Texas law would not allow recovery of uninsured motorist benefits from Farmers. Tex. Ins. Code Ann. art. 5.06–1(2)(d) (Vernon Supp. 2005) (requiring that "where the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, actual physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured" to allow recovery under an uninsured motorist policy). The parties also agree that New Mexico law would invalidate the no-contact clause and allow recovery. *See* NMSA 1978, § 66–5–301 (1983); *Chavez v. State Farm Mut. Auto. Ins. Co.,* 87 N.M. 327, 329–30, 533 P.2d 100, 102–03 (1975) ("[T]he only limitations on [uninsured motorist] protection are those specifically set out in the statute itself, i.e., that the insured be legally entitled to recover damages and that the negligent driver be uninsured."); *see also Montoya v. Dairyland Ins. Co.,* 394 F.Supp. 1337, 1342 (D.N.M.1975) (invalidating the "physical contact" requirement in an uninsured motorist policy in part "because the New Mexico State Legislature did not intend to allow the creation of a gap in coverage").

{6} Plaintiff argues, as he did in the district court, that New Mexico law applies, relying primarily on *State Farm Automobile Insurance Co. v. Ovitz,* 117 N.M. 547, 873 P.2d 979 (1994). *Ovitz* involved a New Mexican insured who was injured in an accident in Hawaii. *Id.* at 548–49, 873 P.2d at 980–81. The insured collected his medical expenses from the owner of the other vehicle, but was precluded from further recovery under Hawaii's no-fault system. *Id.* at 548, 873 P.2d at 980. He sought to recover uninsured motorist benefits under his New Mexico insurance policy. *Id.* at 548–49, 873 P.2d at 980–81. State Farm filed suit for a declaratory judgment on the ground that the other vehicle was not uninsured for the purposes of the insurance contract. *Id.* at 548, 873 P.2d at 980. Our Supreme Court held that while New Mexico law would apply to the interpretation of the contract, Hawaii law governed the meaning of some terms under the contract. *Id.* at 549, 873 P.2d at 981. Specifically, it determined that because the policy only allowed recovery when the insured is *"legally entitled to collect* from the owner or the driver of an *uninsured motor vehicle,"* the insured was not entitled to uninsured motorist benefits because he was not legally entitled to recover from the other owner under Hawaii law. *Id.*

{7} Plaintiff argues that *Ovitz* requires that we apply New Mexico law to determine whether he is "legally entitled to recover" from Farmers. We agree with Plaintiff that *Ovitz* held that the law of the place of the accident governs Plaintiff's right to recover from the owner or driver of the vehicle that ran him off the road. But *Ovitz* also held that the law of the place of the contract, the *lex loci contractus,* applies to interpretation of the terms of the contract. *Id. Ovitz* applied Hawaii law only to determine the rights of parties involved in the accident as to each other. *Id.* It applied New Mexico law to determine the rights of the insured as to his insurance company. *Id.* Applying *Ovitz* to this case, New Mexico law governs whether Plaintiff would be able to recover from the tortfeasor, if known, and Texas law governs whether Plaintiff may recover from Farmers.

**PUBLIC POLICY EXCEPTION**

{8} Having determined that Texas law governs Plaintiff's right to recover from Farmers on his uninsured motorist coverage, we now reach the second question. Plaintiff also argues that we should not apply Texas law because it contravenes New Mexico's public policy. When differences between the law of the forum state and the law of the state where the contract was executed concern only contract interpretation, we will ap-

ply the law of the state where the parties entered the contract. *Shope v. State Farm Ins. Co.,* 1996–NMSC–052, ¶ 9, 122 N.M. 398, 925 P.2d 515. "To overcome the rule favoring the place where a contract is executed, there must be a countervailing interest that is fundamental and separate from general policies of contract interpretation." *Id.* We will apply New Mexico law if applying the law of another state would "result in a violation of fundamental principles of justice" of New Mexico. *State Farm Mut. Auto. Ins. Co. v. Ballard,* 2002–NMSC–030, ¶ 9, 132 N.M. 696, 54 P.3d 537 (internal quotation marks and citation omitted).

{9} Three cases guide our analysis. Plaintiff relies on *Ballard* and *Sandoval v. Valdez,* 91 N.M. 705, 580 P.2d 131 (Ct.App.1978). Both cases applied New Mexico law to contracts issued out of state because applying the *lex locus contractus* would have resulted in a violation of New Mexico's public policy. Defendant relies primarily on *Shope,* which applied Virginia law to interpret a Virginia contract despite the possibility of a different outcome under New Mexico law. We address these cases in turn.

{10} In *Ballard,* our Supreme Court applied New Mexico rather than Georgia law despite the fact that the policy was executed in Georgia. *Ballard,* 2002–NMSC–030, ¶¶ 1, 3, 132 N.M. 696, 54 P.3d 537. *Ballard* arose out of a single-vehicle accident in New Mexico that resulted in the death of the driver and a passenger and serious injury to another passenger, the daughter of the insured owner. *Id.* ¶¶ 2, 5. State Farm filed an action in New Mexico district court seeking a declaratory judgment as to the extent of its liability. *Id.* ¶ 1. The insurance policy at issue contained a "step down" provision eliminating coverage for injury to family members of the insured in excess of the statutory minimum. *Id.* ¶ 4. State Farm argued that because the policy was executed in Georgia, Georgia law, permitting such provisions, should apply. *Id.* ¶ 6. The insured argued that the step down provision was invalid under New Mexico law. *Id.* Our Supreme Court held that the step down provision violated New Mexico's public policy and refused to enforce it. *Id.* ¶ 11.

{11} *Ballard* noted that the New Mexico Mandatory Financial Responsibility Act, NMSA 1978, §§ 66–5–201 to –239 (1978, as amended through 2003), did not allow exclusion of coverage for family members. *Ballard,* 2002–NMSC–030, ¶ 11, 132 N.M. 696, 54 P.3d 537. It relied on *Estep v. State Farm Mutual Automobile Insurance Co.,* 103 N.M. 105, 703 P.2d 882 (1985), for the proposition that step down provisions are not merely prohibited but also constitute "a repudiation of New Mexico's public policy." *Ballard,* 2002–NMSC–030, ¶ 11, 132 N.M. 696, 54 P.3d 537 (internal quotation marks and citation omitted). *Ballard* considered step down provisions to be unenforceable because they are "contrary to protecting innocent accident victims" and because "the reasons for [step down provisions] are no longer valid." *Id.* ¶ 12 (internal quotation marks and citation omitted).

{12} Farmers argues that *Ballard* does not mandate reversal in this case for two reasons. First, Farmers contends that the insured in *Ballard* reasonably expected that her coverage applied to all passengers, while in this case Plaintiff reasonably expected that Texas law would apply. *See Ballard,* 2002–NMSC–030, ¶ 3, 132 N.M. 696, 54 P.3d 537 (noting that the insured purchased insurance "stating that she wanted the same coverage which she had in California"). But *Ballard* did not rely on the insured's expectation. Rather, *Ballard* held that "[o]nce [State Farm] sold [the insured] insurance that exceeded the 'limits required by law,' this coverage applies equally to all accident victims, whether the victim is a family member or not, as a matter of New Mexico public policy." *Id.* ¶ 14. Second, Farmers argues that *Ballard* involved liability coverage, which is mandatory, rather than uninsured motorist coverage, which may be rejected. *Id.* ¶ 1; *see* § 66–5–301(C). We find this argument unpersuasive because *Ballard* also involved coverage purchased by the insured in excess of that required by law. *Ballard,* 2002–NMSC–030, ¶ 14, 132 N.M. 696, 54 P.3d 537.

{13} We do note, however, that *Ballard* addressed not only protection of innocent accident victims, but also discrimination against a discrete group: family members of

the insured. *Id.* ¶ 10. Plaintiff argues that this distinction is irrelevant, but language in *Ballard* indicates otherwise. Specifically, for the proposition that the policy's step down provision violated fundamental principles of justice, *Ballard* relied in part on New Mexico's rejection of interspousal immunity in several different contexts. *Id.* ¶ 12 ("Familial exclusion, whether in relation to insurance contracts . . . or tort law, . . . is an anachronism . . . ."). We are therefore not persuaded that the contact requirement in this case implicates such a fundamental principle of justice as that invalidating the step down provision in *Ballard.*

{14} Nonetheless, *Ballard* is highly instructive to our analysis. Our Supreme Court in *Ballard* used New Mexico's public policy to invalidate a Georgia provision because it violated New Mexico insurance statutes and our common law policies and because it was not justified by other policy concerns. *Id.* ¶¶ 11–14. The Court rejected State Farm's argument that the contract provision at issue should be enforced because it was designed to protect insurance companies from fraud. *Id.* ¶¶ 13–14. The Court also rejected the argument that the provision should be enforced because of our policy favoring freedom of contract. *Id.* ¶ 13.

{15} As Plaintiff notes, our policy reason for disallowing exclusions from uninsured motorist coverage is the same as one of the policies at stake in *Ballard:* protecting innocent accident victims. *See id.* ¶¶ 13–14. As did our Supreme Court in *Ballard,* here we do not accept the proposition that protecting insurance companies from fraudulent claims justifies enforcing an exclusion from coverage purchased in another state. *Id.* Texas may have a policy of protecting insurance companies, but, in the context of uninsured motorist coverage, New Mexico has chosen to protect accident victims. *See, e.g., Sandoval,* 91 N.M. at 708, 580 P.2d at 134 ("[T]he uninsured or unknown motorist statutes are designed to protect the injured party from the uninsured or unknown motorist. The statutes are not designed to protect the insurance company from the injured party.") (internal quotation marks and citation omitted).

{16} We also do not agree with Farmers that we should balance our policy of protecting accident victims against our strong policy favoring freedom of contract. *See, e.g., McMillan v. Allstate Indem. Co.,* 2004–NMSC–002, ¶ 10, 135 N.M. 17, 84 P.3d 65 ("New Mexico public policy favors freedom to contract and enforces contracts that do not violate law or public policy."). Freedom of contract is not an issue in this case. Plaintiff could not have chosen to enter into an insurance contract that did not have an exclusion for uninsured motorist coverage when no physical contact occurs. Texas law required such a provision be included in his contract. *See* art. 5.06–1(2).

{17} The only meaningful distinction we see between this case and *Ballard* is the source of the public policy that would invalidate the contract provision. In *Ballard,* that source was not merely statutory. *Ballard,* 2002–NMSC–030, ¶ 12, 132 N.M. 696, 54 P.3d 537. In this case, Plaintiff has not pointed to any fundamental public policy other than that expressed in our uninsured motorist statutes. Nonetheless, Plaintiff argues that such a policy is not required because no such policy was discussed in *Sandoval.* We agree.

{18} *Sandoval* applied New Mexico law to invalidate a provision in a Colorado insurance contract that limited the insured's time in which to bring a lawsuit. *Sandoval,* 91 N.M. at 707, 580 P.2d at 133. *Sandoval* found that our uninsured motorist statute embodied the public policy of protecting injured accident victims. *Id.* at 708, 580 P.2d at 134. We held that New Mexico law applied because Colorado law might conflict with that policy. *Id.* at 707–08, 580 P.2d at 133–34. We determined that the provision in the insurance contract was "void [because it] place[d] a limitation upon or conflict[ed] with a statute granting uninsured motorist coverage." *Id.* at 708, 580 P.2d at 134.

{19} Farmers argues that *Sandoval* applied New Mexico law only because Colorado law was not clear. We agree that *Sandoval* indicated that it did not find Colorado case law addressing the issue. *Id.* at 707, 580 P.2d at 133. But *Sandoval* did not apply New Mexico law for that reason. Rather, it held the time limitation provision invalid be-

cause any other result would conflict with the policy of New Mexico's uninsured motorist statute. *Id.* at 708, 580 P.2d at 134.

{20} Unlike *Ballard, Sandoval* did not consider whether a public policy other than that embodied in our statutes would be violated by application of the *lex locus contractus.* Rather, *Sandoval* held that our uninsured motorist statutes required application of our law if it conflicted with the *lex locus contractus* because New Mexico's uninsured motorist statutes embody our public policy of protecting accident victims. *Sandoval,* 91 N.M. at 707–08, 580 P.2d at 133–34. Application of *Sandoval* to this case requires reversal. It is clear that Texas law violates New Mexico's public policy as expressed in our uninsured motorist statutes.

{21} Farmers argues, relying on *Shope,* that Texas law should apply because any differences between New Mexico and Texas law concern mere contract interpretation. We do not agree. In *Shope,* our Supreme Court applied Virginia law that allowed stacking of insurance unless "clear and unambiguous language in the policy prevents it." *Shope,* 1996–NMSC–052, ¶¶ 1, 6, 122 N.M. 398, 925 P.2d 515. The plaintiff in *Shope* purchased two insurance policies in Virginia for his Virginia automobiles. *Id.* ¶ 3. He and his family then moved to New Mexico without transferring the policies. *Id.* ¶ 4. The plaintiff's son was killed less than two weeks later by an uninsured vehicle and the plaintiff sought to stack his uninsured motorist benefits. *Id.* Our Supreme Court held that New Mexico's policy favoring stacking of uninsured motorist policies "does not rise to the level of a fundamental principle of justice." *Id.* ¶¶ 7, 9. *Shope* went on to note that New Mexico might enforce a *"truly unambiguous antistacking clause"* despite our policy if enforcement is fair to the insured. *Id.* ¶ 10 (internal quotation marks and citation omitted).

■ {22} Farmers' reliance on *Shope* is misplaced. New Mexico's public policy preventing exclusions from uninsured motorist coverage is not merely a matter of contract interpretation. Our courts will not enforce even an unambiguous provision excluding coverage for accidents involving uninsured

motorists when no physical contact between the covered and the uninsured vehicle takes place. *See Chavez,* 87 N.M. at 329–30, 533 P.2d at 102–03. Certainly our public policy preventing exclusions from coverage is more important than our policy that merely favors stacking. *Shope* is inapplicable to this case because the difference between the New Mexico public policy prohibiting enforcement of an exclusion to uninsured motorist coverage and the Texas policy requiring such an exclusion is not an issue of contract interpretation.

■ {23} Thus, although we agree with Farmers that the public policy at issue in this case may not rise to the level of a fundamental principle of justice, we do not believe that the language used is the issue. Regardless of the label, *Ballard* and *Sandoval* indicate that a substantial public policy is implicated, and that policy mandates reversal in this case. We agree with Plaintiff that the exclusion of uninsured motorist coverage for accidents not involving physical contact with the uninsured vehicle violates New Mexico's public policy and cannot be enforced in courts of this state. *See Chavez,* 87 N.M. at 329–30, 533 P.2d at 102–03. Plaintiff seeks compensatory damages, which are designed to "protect innocent accident victims consistent with the fundamental public policy purpose" of our uninsured motorist statute. *Ballard,* 2002–NMSC–030, ¶ 16, 132 N.M. 696, 54 P.3d 537 (internal quotation marks and citation omitted). Plaintiff has purchased uninsured motorist coverage. We will not apply exclusions to his coverage that are prohibited by our statutes and by our public policy.

## CONCLUSION

{24} We reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

{25} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and MICHAEL E. VIGIL, Judges.