2007-NMSC-015

156 P.3d 25

**Christina BORADIANSKY, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant.**

**No. 30,031.**

Supreme Court of New Mexico.

March 26, 2007.

Bennett & Kosh, Merit Bennett, Talia Kosh, Santa Fe, NM, for Plaintiff.

Guebert, Bruckner & Bootes, P.C., Christopher J. DeLara, Terry R. Guebert, RaMona G. Bootes, Albuquerque, NM, for Defendant.

**OPINION**

MINZNER, Justice.

{1} Plaintiff Christina Boradiansky filed a civil action against Defendant State Farm Mutual Automobile Insurance in the First Judicial District Court on December 22, 2005, alleging causes of action arising out of a car accident in Santa Fe, New Mexico. State Farm removed the matter to the United States District Court for the District of New Mexico on January 20, 2006. Both Plaintiff and Defendant filed dispositive motions in the federal district court. Based on those motions, United States District Judge Black certified two questions to this Court pursuant to NMSA 1978, § 39–7–4 (1997), and Rule 12–607 NMRA. They are:

(1) Whether Defendant's insurance policy provision, excluding all government-owned vehicles from the definition of an "uninsured motor vehicle," is unenforceable because it violates public policy as established by New Mexico's Uninsured Motorist Act, NMSA 1978, § 66–5–301 (1983);

(2) Whether an insured carrying underinsured-motorist coverage is "legally entitled to recover" damages exceeding the limits established by the New Mexico Tort Claims Act, NMSA 1978, § 41–4–19 (2004), when the insured is injured by a government employee driving a government-owned vehicle and makes a claim against her insurer for damages that exceed those limits.

{2} We conclude that the exclusion of all government-owned vehicles from the definition of an "uninsured motor vehicle" is unenforceable because it violates the public policy illustrated within New Mexico's Uninsured

Motorist Act. Further, we conclude Plaintiff is legally entitled to recover damages in this case within the meaning of Section 66–5–301, notwithstanding the limitations imposed by the Tort Claims Act on recovery against the State. We therefore answer both questions in the affirmative.

## I.

{3} On November 5, 2000, Plaintiff was severely injured in a motor vehicle accident when a Sandoval County Sheriff's deputy ran a red light, while driving a government vehicle, and broad sided her vehicle. At the time of the accident, Plaintiff carried uninsured/underinsured motorist coverage of $500,000 as a part of her motor vehicle policy and an additional $2,000,000 under her umbrella policy. Plaintiff settled her claim against the governmental defendant for less than the cap under the Tort Claims Act, and she requested additional payments from Defendant in excess of the limits imposed by the Act. *See* § 41–4–19.

{4} Defendant denied coverage. Defendant argues, as it did in federal district court, that Plaintiff's policies contained an express exclusion; the policies provided that an "uninsured motor vehicle" does not include a vehicle "owned by a government or any of its political subdivisions or agencies" and, in addition, the New Mexico Tort Claims Act does not allow a plaintiff to recover any amount of damages greater than the limits set forth in the statute. Therefore, Defendant reasons, Plaintiff was not "legally entitled to recover" damages greater than those limits, and she should not recover under the Uninsured Motorist Act. *See* § 66–5–301 (providing that uninsured motorist coverage is offered "for the protection of persons insured … who are *legally entitled to recover damages* from owners or operators of uninsured motor vehicles") (emphasis added). Plaintiff contends that the government-owned vehicle exclusion is unenforceable because it violates public policy. Further, she argues that the phrase "legally entitled to recover" simply means that she must establish fault on behalf of the other driver.

## II.

{5} These are questions of first impression in New Mexico and are reviewed de novo.

"Appellate courts review questions of law de novo." *Hasse Contracting Co. v. KBK Fin., Inc.,* 1999–NMSC–023, ¶ 9, 127 N.M. 316, 980 P.2d 641. The initial inquiry in this case is whether the Uninsured Motorist Act permits State Farm to exclude coverage for government-owned vehicles under its policy.

## A.

{6} Over the years, our courts have considered various exclusions listed in insurance policies. *See Gov't Employees Ins. Co. v. Welch,* 2004–NMSC–014, 135 N.M. 452, 90 P.3d 471 (household exclusions of liability and underinsured motorists from umbrella coverage); *State Farm Mut. Auto. Ins. Co. v. Ballard,* 2002–NMSC–030, 132 N.M. 696, 54 P.3d 537 (family exclusion step down provision); *Phoenix Indem. Ins. Co. v. Pulis,* 2000–NMSC–023, 129 N.M. 395, 9 P.3d 639 (named-driver exclusion); *Found. Reserve Ins. Co. v. Marin,* 109 N.M. 533, 787 P.2d 452 (1990) (exclusion from uninsured motorist coverage for uninsured vehicles owned by insured or any family member); *Chavez v. State Farm Mut. Auto. Ins. Co.,* 87 N.M. 327, 533 P.2d 100 (1975) (exclusion of uninsured motorist coverage in an automobile policy when insured was occupying an uninsured motor vehicle owned by him); *Demir v. Farmers Tex. County Mut. Ins. Co.,* 2006–NMCA–091, 140 N.M. 162, 140 P.3d 1111 (exclusion of uninsured motorist coverage for accidents not involving physical contact with uninsured vehicle); *Martinez v. Allstate Ins. Co.,* 1997–NMCA–100, 124 N.M. 36, 946 P.2d 240 (household exclusion under liability coverage); *Sandoval v. Valdez,* 91 N.M. 705, 580 P.2d 131 (Ct.App.1978) (one year limitation of time provision for claiming of uninsured motorist coverage). Throughout, our courts have invalidated exclusions that they determined were in conflict with the underlying purpose of the Uninsured Motorist Act.

{7} Our rationale has varied, or seems to have varied, perhaps because we were considering in some cases whether applying New Mexico law was appropriate because the law of the place where the contract was formed was contrary to New Mexico public policy, *see, e.g., Ballard,* 2002–NMSC–030, ¶ 18, 132 N.M. 696, 54 P.3d 537, or whether the rights of a class-one insured were at

issue. *See Phoenix,* 2000–NMSC–023, ¶ 26, 9 P.3d 639; *Martinez,* 1997–NMCA–100, ¶ 18, 124 N.M. 36, 946 P.2d 240. We have referred several times to the exclusion of a discrete group as improper. *See Welch,* 2004–NMSC–014, ¶ 8, 135 N.M. 452, 90 P.3d 471; *Ballard,* 2002–NMSC–030, ¶ 13, 132 N.M. 696, 54 P.3d 537. We have been clearest about limitations on the rights of a class-one insured to recover. *See Phoenix,* 2000–NMSC–023, ¶ 26, 9 P.3d 639; *Martinez,* 1997–NMCA–100, ¶ 18, 124 N.M. 36, 946 P.2d 240. We have identified on occasion what we described as a gap in coverage the Legislature did not intend. *See Phoenix,* 2000–NMSC–023, ¶ 20, 9 P.3d 639; *Found. Reserve,* 109 N.M. at 535, 787 P.2d at 454; *Chavez,* 87 N.M. at 330, 533 P.2d at 103. We have struggled with the difference between valid contractual limitations on an insured's right to recover, *see Hartford Ins. Co. v. Cline,* 2006–NMSC–033, ¶ 15, 140 N.M. 16, 139 P.3d 176, and those that are clearly inconsistent with the Legislature's intent in enacting the Uninsured Motorist Act. *See Sandoval,* 91 N.M. at 708, 580 P.2d at 134.

{8} This Court in *Chavez* took the opportunity to discuss the legislative intent and purpose behind the Uninsured Motorist Act. In *Chavez,* State Farm argued that in ascertaining the object of uninsured motorist statute, the court need look no further than the text of the statute. 87 N.M. at 328, 533 P.2d at 101. We noted that " 'the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance.' " *Id.* at 329, 533 P.2d at 102 (quoting *Bartlett v. Nationwide Mut. Ins. Co.,* 33 Ohio St.2d 50, 294 N.E.2d 665, 666 (1973)). Our cases suggest the text of the statute has not proved as easy to apply in some circumstances as others.

{9} Because this Court has cautioned on several occasions against reading the Uninsured Motorist Act to create unintended gaps in coverage, we believe seeking to avoid such gaps is an appropriate rationale on which we may rely in resolving the certified questions before this Court. "[T]he Legislature did not intend to allow the creation of a gap in coverage which is contrary to the purpose of the statute." *Id.* at 330, 533 P.2d at 103. Reading the Uninsured Motorist Act to allow an exclusion of certain vehicles creates the type of impermissible gap the Legislature sought to avoid. We also have said "it is not the intent of the statute to limit coverage for an insured to a particular location or a particular vehicle." *Id.* The main focus behind the Uninsured Motorist Act was to allow for coverage to be provided for innocent motorists injured through the fault of uninsured or underinsured motorists in New Mexico. It seems counterintuitive to suggest that the Legislature intended to create a gap in coverage by permitting a contractual exclusion of government-owned vehicles from uninsured or underinsured motorist claims. It also seems inconsistent with our concern for excluding coverage for discrete groups. If coverage is intended to be broad, then the exclusion of discrete groups of defendants seems as anomalous as discrete groups of plaintiffs.

{10} A majority of the other states that have dealt with government-owned vehicle exclusions have found them contrary to the purpose of uninsured motorist coverage statutes. *Cropper v. State Farm Mut. Auto. Ins. Co.,* 671 A.2d 423, 426–27 (Del.Super.Ct.1995). "Once uninsured motorist coverage is purchased, the insurance consumer is entitled to secure the full extent of the benefit which the law requires to be offered. Attempts by insurers to reduce this benefit by exclusion clauses are repugnant to the public policy of protecting persons injured in automobile accidents." *Id.* at 426 (internal citation omitted). "While insurers may exclude or limit liability coverage so long as public policy is not violated, provisions attempting to limit coverage required by statute are void." *Borjas v. State Farm Mut. Auto. Ins.,* 33 P.3d 1265, 1270 (Colo.Ct.App. 2001); *see also Hillhouse v. Farmers Ins. Co.,* 226 Kan. 68, 595 P.2d 1102, 1103 (1979) (holding that uninsured motorist coverage is mandated, and attempts to "dilute or limit statutorily mandated coverage" consistently have been held void or invalid); *Gabriel v. Minn. Mut. Fire & Cas.,* 506 N.W.2d 73, 76 (N.D.1993) (holding that exclusion of under-

insured motorist coverage for accidents involving government vehicles is invalid as contrary to law); *Rueschemeyer v. Liberty Mut. Ins. Co.*, 673 A.2d 448, 451 (R.I.1996) (holding that "the government-owned vehicle exclusion contained in the policy at issue is void as a matter of law and as a matter of public policy"). The weight of this authority is impressive. Based on our own cases and the weight of authority elsewhere, we answer the first certified question affirmatively.

**B.**

■ {11} Since the enactment of the Uninsured Motorist Act, our courts have had some time to address the issues presented by the phrase "legally entitled to recover." *See, e.g., State Farm Auto. Ins. Co. v. Ovitz,* 117 N.M. 547, 549–50, 873 P.2d 979, 981–82 (1994); *Wood v. Millers Nat'l Ins. Co.,* 96 N.M. 525, 528–29, 632 P.2d 1163, 1166–67 (1981); *Demir,* 2006–NMCA–091 ¶¶ 6–7, 140 N.M. 162, 140 P.3d 1111; *State Farm Mut. Auto. Ins. Co. v. Luebbers,* 2005–NMCA–112, ¶¶ 10–28, 138 N.M. 289, 119 P.3d 169, *cert. quashed,* 2006–NMCERT–010, 140 N.M. 675, 146 P.3d 810; *State Farm Mut. Auto. Ins. Co. v. Maidment,* 107 N.M. 568, 572–74, 761 P.2d 446, 450–52 (Ct.App.1988). In the abstract, the phrase seems potentially circular. That is, it may mean only that a court of competent jurisdiction has determined the plaintiff has a right to recover. Alternatively, it may mean that there is no statutory or other legal barrier to recovery.

{12} Our courts have not been consistent or clear in defining the standard. In *Wood,* this Court held "that the phrase [legally entitled to recover] merely requires that the determination of liability be made by legal means." 96 N.M. at 529, 632 P.2d at 1167. In *Maidment,* the Court of Appeals addressed the issue of "whether an insured [could] recover punitive damages from his insurer when the uninsured motorist dies before an award is made." 107 N.M. at 569, 761 P.2d at 447. The Court of Appeals held that the insured could not recover because the claim expired with the uninsured tortfeasor. *Id.* at 572–74, 761 P.2d at 450–52. In *Ovitz,* this Court addressed the issue of whether New Mexico residents could recover uninsured motorist benefits for an accident

that occurred in Hawaii. The Court concluded that the insurer was not obligated to pay uninsured motorist benefits because, under Hawaiian law, the plaintiffs were not injured by an uninsured motorist; the owner of the automobile that injured the insured was self-insured and met the minimum coverage amounts under both New Mexico and Hawaiian law. *Ovitz,* 117 N.M. at 549, 873 P.2d at 981. Further, the plaintiffs were not "legally entitled to collect" noneconomic damages because of Hawaii's no-fault insurance statute. *Id.* at 550, 873 P.2d at 982.

{13} Defendant suggested in oral argument that we need not look to the law of other jurisdictions because our own cases controlled the result in this case. We are not persuaded. The phrase "legally entitled to recover" seems something of a chameleon, varying with the facts and procedural context in which the need to define the phrase arises. Under these circumstances, we think cases from other jurisdictions, particularly when they are as uniform in result as they seem to be on the issues in this appeal, are helpful.

{14} Many jurisdictions have held that the phrase "legally entitled" means "the injuries must result from the negligent conduct of an uninsured motorist." 1 Alan I. Widiss & Jeffery E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 7.2, at 363 (3d. ed.2005). However, if the court determines that the insured is not legally entitled to recover, notwithstanding the negligence of the motorist, typically he or she is precluded from uninsured motorist benefits. *Id.* at 367. Defendant contends that Plaintiff cannot recover the damages she seeks because the Tort Claims Act, which caps recovery from governmental defendants, precludes her from being legally entitled to recover. Plaintiff claims she is legally entitled to recover damages because the sheriff's deputy pled guilty in municipal court, and there has never been a dispute over who was at fault. Defendant claims that the text of the Tort Claims Act resolves the issue; the Act provides that Plaintiff is not "legally entitled to recover" damages beyond that contained in the Tort Claims Act.

{15} However, it seems unlikely to us that the Legislature intended to prevent an in-

sured's access to insurance proceeds from uninsured or underinsured motorist coverage when the amount available under the Tort Claims Act cannot compensate fully for the injury. The purpose behind the Tort Claims Act is stated in the language itself.

> The legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity. On the other hand, the legislature recognizes that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done. Consequently, it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act.

NMSA 1978, § 41-4-2 (1976) (internal citation omitted).

{16} The Tort Claims Act seeks not only to protect the government, but to insure that there will be some recovery for those injured by negligent government employees. In this case, the Uninsured Motorist Act must be read in conjunction with the Tort Claims Act. The Legislature did not intend for the government and government employees to have absolute protection when someone is injured by their negligence. Further, it seems that the purpose of the Uninsured Motorist Act is much like the purpose of the Tort Claims Act, that is, to provide compensation to the injured party. In this case, by virtue of the Tort Claims Act, the government is underinsured with respect to the injuries sustained by Plaintiff. However, the Legislature has provided a "fix" through the Uninsured Motorist Act in motor vehicle accidents where the negligent party is not adequately insured. If the Legislature had intended limitations, we think the Legislature would have been explicit. Construing *Chavez*, the Court of Appeals in *Sandoval* stated "the only limitations under the New Mexico Uninsured Motorist Act shall be those specifically set out in

the act itself." 91 N.M. at 708, 580 P.2d at 134.

{17} That general statement may be another way of expressing the view that the Legislature did not intend gaps in coverage that were inconsistent with the purposes of the Act. *Chavez*, 87 N.M. at 330, 533 P.2d at 103. The only limitations contained in the Act are that the motorist be uninsured or underinsured and the party suing be legally entitled to recover damages. *See* § 66-5-301(A). We think Defendant is arguing Plaintiff must be entitled to recover unlimited damages under the Tort Claims Act. We disagree. We think she is in no different situation than if the tortfeasor had been covered inadequately under a commercial policy.

{18} This case is similar to *Borjas* and *West American Insurance Co. v. Popa*, 352 Md. 455, 723 A.2d 1 (1998). In *Borjas*, the plaintiff was injured in an automobile accident with a police officer. Plaintiff initially tried to sue the police officer and his employer, but the case was dismissed because the defendants were immune from suit under the Colorado Governmental Immunity Act (CGIA). 33 P.3d at 1266. The plaintiff then brought suit against her insurer under the uninsured motorist provisions of her policy. *Id.* at 1266–67. The plaintiff claimed that the exclusion in the insurance policy violated public policy. *Id.* at 1267. *Borjas* held that the purpose behind the uninsured motorist statute was "to ensure that individuals injured in an accident will be compensated for their losses even if the other motorist is uninsured." *Id.* Because immunity from suit would result in the same conclusion as would an injury caused by an uninsured motorist, the court concluded that the legal irresponsibility had the same effect in both situations. *Id.* at 1268. The court held that the uninsured motorist statute provides for drivers to purchase coverage in order to protect themselves, not only from an uninsured motorist, but also those protected under the CGIA. *Id.* The court perceived no inconsistencies between the policies of the two statutes and the interests protected. *Id.*

{19} In *Popa*, the plaintiffs' son was killed when his vehicle was struck by a Maryland State Police officer. 723 A.2d at 2. The

insurer claimed the plaintiffs were not entitled to uninsured/underinsured motorist benefits because they were not "legally entitled to recover" any amount beyond the $50,000 cap of the Maryland Tort Claims Act. *Id.* at 5. The court noted it had previously held "that 'legally entitled to recover' in the uninsured motorist provisions of the policy meant only that the insured establish fault on the part of the uninsured or underinsured motorist and establish the amount of his or her damages." *Id.* at 7; *see Reese v. State Farm Mut. Auto. Ins. Co.,* 285 Md. 548, 403 A.2d 1229, 1233 (1979). The court concluded the plaintiffs were entitled to recover the uninsured motorist coverage offset by the amount received from the governmental defendant under the Tort Claims Act. *Popa,* 723 A.2d at 11.

{20} The facts in our case correspond. Plaintiff in this case was injured by a police officer protected by the Tort Claims Act, which limited her recovery against New Mexico. Like *Borjas* and *Popa,* which both found that immunity was not a bar to the right to "legally recover" in those cases, we conclude the cap in the Tort Claims Act is not a bar to Plaintiff's right to legally recover within the meaning of Section 66–5–301. We perceive no inconsistencies between the policies of the two statutes and the interests protected. We therefore answer the second certified question in the affirmative.

## III.

{21} We conclude Plaintiff is entitled to recover uninsured motorist benefits. Our answers to the questions certified to this Court are as follows: (1) on the first question, we conclude that the government-owned vehicle exclusion violates the public policy of New Mexico because it creates an unintended gap in coverage; and (2) on the second question, we conclude Plaintiff is "legally entitled to recover" underinsured motorist damages beyond the limits established by the Tort Claims Act because the cap applies to recovery against the State. Thus, we answer both questions in the affirmative.

{22} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PETRA JIMENEZ MAES,

RICHARD C. BOSSON, Justices and RODERICK T. KENNEDY, Judge (sitting by designation).