IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-052

Filing Date: February 18, 2014

Docket No. 32,815

VICTORIA ESCKELSON,

        Worker-Appellee,

v.

MINERS' COLFAX MEDICAL CENTER and
NEW MEXICO RISK MANAGEMENT DIVISION,

        Employer/Insurer-Appellants.

APPEAL FROM WORKERS' COMPENSATION ADMINISTRATION
Victor S. Lopez, Workers' Compensation Judge

Peter D. White
Santa Fe, NM

for Appellee

Paul L. Civerolo, LLC
Paul L. Civerolo
Albuquerque, NM

for Appellants

OPINION

WECHSLER, Judge.

{1}    This case is an appeal from an order by a workers' compensation judge (WCJ) granting benefits to Victoria Esckelson (Worker). Miners' Colfax Medical Center and New Mexico Risk Management Division (collectively, Employer) appeal as to whether Worker's injury was compensable, the impairment rating given to Worker was correct, and the reduction of the statutory credit due to Employer for disability insurance paid for partially by Employer was proper. The last ground for appeal—the apportionment of the disability benefit credit due Employer in accordance with Employer's and Worker's respective

premium contributions—is an issue of first impression. We conclude that Worker's injury was compensable because Worker was a non-participant in the workplace accident, that the impairment rating given to Worker was supported by substantial evidence and therefore proper, and that NMSA 1978, Section 52-1-47.1(A) (1990) does not entitle Employer to an offset for the percentage of disability benefits paid for by Worker's premium contributions. We affirm the order of the WCJ on all three issues.

## BACKGROUND

**{2}**    Worker was employed as a housekeeper at Miners' Colfax Medical Center. It is undisputed that, on August 27, 2010, Worker suffered an injury while on break at her workplace. The WCJ found that a co-worker grabbed Worker by her shoulders in the area of her neck and lifted her off the ground. Although the co-worker was reportedly joking around, Worker sustained an injury.

**{3}**    Worker reported the incident and went to the emergency room, where she had an MRI. Worker was found to have "significant" spinal stenosis, including cervical compression. She eventually underwent surgery, a cervical spine fusion and discectomy.

## COMPENSABILITY OF ACCIDENT

**{4}**    Employer asserts that the WCJ committed error in finding that Worker's injury was compensable. Employer argues that the WCJ incorrectly found that Worker was a non-participating victim of the incident. This is a critical finding because only if Worker was a non-participant in the horseplay that led to her injury, would Worker's injury have arisen out of and in the course of her employment and would therefore be compensable under the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2013). *See Woods v. Asplundh Tree Expert Co.*, 1992-NMCA-046, ¶ 7, 114 N.M. 162, 836 P.2d 81 (stating that an accident resulting from a sportive assault on a non-participating victim arises out of and in the course of employment); *see also* 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 23.02, at 23-2 to -3 (2013) ("It is now clearly established that the non-participating victim of horseplay may recover compensation."); Jack B. Hood, Benjamin A. Hardy, Jr., & Harold S. Lewis, Jr., *Workers' Compensation and Employee Protection Laws* 116-17 (5th ed. 2011) ("There is little difficulty in providing coverage for a non-participant who is a victim of a horseplay injury; such an injury is viewed as being within the scope of the risk of one's employment."). Whether Worker participated in the incident is a question of fact that we review for substantial evidence in support of the finding. *See ABF Freight Sys. v. Montano*, 1982-NMSC-149, ¶ 5, 99 N.M. 259, 657 P.2d 115 (noting that findings of a trial court that are supported by substantial evidence will be accepted on appeal). Substantial evidence supports the WCJ's finding that Worker was a non-participant and that the horseplay was one-sided on the part of the co-worker.

**{5}**    Employer concedes that there were different accounts as to whether Worker

physically participated in the exchange prior to co-worker laying hands on Worker. Although the co-worker who injured Worker reported that Worker participated by bumping him first, Worker indicates otherwise. The only other co-worker who witnessed events prior to the incident reported joking and laughing but not physical contact on the part of Worker.

**{6}** Employer also argues that the WCJ applied the wrong legal standard, regardless of whether Worker participated in the incident. Whether the correct test was applied to the facts is a legal question that we review de novo. *See Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 2007-NMSC-015, ¶ 5, 141 N.M. 387, 156 P.3d 25 (noting that appellate courts review legal questions de novo).

**{7}** According to Employer, even if Worker was a non-participant in horseplay, Worker's injury was non-compensable unless the course of employment test articulated in *Woods* was met. Under *Woods*, when determining whether an injury resulting from mutual horseplay is compensable, a factfinder is required to consider whether a workplace accident occurred during a substantial deviation from the course of employment. 1992-NMCA-046, ¶¶ 11, 22. The four factors to be considered in reaching this determination are: (1) the extent and seriousness of the deviation, (2) the completeness of the deviation (such as whether it was commingled with the performance of duty or involved an abandonment of duty), (3) the extent that horseplay had become an accepted part of the employment, and (4) the extent to which horseplay might be expected due to the nature of the employment. *Id.* ¶ 22. Employer contends that because WCJ did not apply the *Woods* test, the case should be remanded. Because Employer ignores a critical distinction in *Woods* that governs the analysis in this case, we disagree.

**{8}** *Woods* clearly distinguishes between cases in which the worker is a participant in horseplay and those in which the worker is a non-participating victim. *Id.* ¶¶ 7-8, 13. The *Woods* course of employment test applies only to cases in which a worker is injured while engaging in horseplay. *See id.* ¶¶ 7-8, 11, 22. Because the WCJ found that this case concerns a non-participating victim based on substantial evidence, Employer is incorrect to assert that the WCJ should have applied the course of employment test. Worker's injury was an accidental result of an incident that she neither expected nor designed and is therefore compensable under the Workers' Compensation Act. *See Griego v. Patriot Erectors, Inc.*, 2007-NMCA-080, ¶¶ 8, 13, 141 N.M. 844, 161 P.3d 889 (stating that an incident that is not expected or designed by the injured worker is accidental and therefore within the scope of the Workers' Compensation Act).

**WORKER'S IMPAIRMENT RATING**

**{9}** Employer contends that the WCJ's finding of a twenty-six percent whole-body impairment rating for Worker as a result of her work-related, cervical injuries, to a reasonable degree of medical probability, was error. We review for substantial evidence in support of the WCJ's finding. *See Grudzina v. N.M. Youth Diagnostic & Dev. Ctr.*, 1986-NMCA-047, ¶ 27, 104 N.M. 576, 725 P.2d 255 (holding that the findings of the trial

court should be affirmed if supported by substantial evidence).

**{10}** Dr. Christopher Patton performed an independent medical examination on Worker and testified that Worker's injuries were a result of the workplace incident. Dr. Patton found that Worker had a pre-existing but asymptomatic spinal condition, spinal stenosis, that became symptomatic upon being lifted off the ground by her co-worker. In addition to the spinal condition, Worker had a central nervous system condition, myelopathy, that resulted from the accident. Surgery was required to prevent worsening of significant symptoms.

**{11}** After maximum medical improvement, Dr. Patton assigned Worker a combined whole person impairment rating of twenty-six percent. This figure was based on an eight percent impairment rating from Worker's cervical spinal stenosis and the results of the cervical spine fusion in combination with a twenty percent impairment rating based on her cervical myelopathy. Dr. Patton's conclusions were grounded in reasonable medical certainty.

**{12}** Dr. Patton's testimony was uncontradicted. Nevertheless, Employer argues that the WCJ committed error in adopting Dr. Patton's impairment rating because: (1) Dr. Patton's causation finding for myelopathy was based on the fact that Worker was suspended in the air for "five to six minutes" and (2) Worker's gait problems were not documented until almost two years after the incident during Dr. Patton's examination. Both arguments fail. Dr. Patton testified that Worker's cervical myelopathy resulted from the accident and that, from his understanding, Worker may have been off the ground for seconds or minutes. Therefore, Dr. Patton's myelopathy causation finding was not dependent on a finding that Worker was off the ground for at least five minutes. Nor was Dr. Patton's testimony with regard to Worker's gait deficient to support the WCJ's findings. He testified that Worker's gait pattern was consistent with cervical myelopathy. His conclusion was based on his personal examination of Worker. When asked whether he was able to reconcile his observations with the fact that Worker's prior records did not record gait abnormalities, Dr. Patton testified that he thought it likely that in the prior year Worker had abnormalities that were not identified.

**{13}** Citing *Grudzina*, Employer correctly points out that even uncontradicted expert testimony can be disregarded when the factual basis for those opinions is unsound. 1986-NMCA-047, ¶ 22. However, the findings of a trial court based on expert testimony cannot be disregarded by an appellate court when those findings are supported by substantial evidence. *Id.* ¶ 27. The WCJ found that Worker had a twenty-six percent impairment rating based on uncontradicted expert testimony of Dr. Patton and, accordingly, there was no error.

**{14}** Employer also argues that the WCJ failed to specifically find that cervical myelopathy was an established disability for Worker, and, therefore, regardless of the testimony of Dr. Patton, the impairment rating based on the combination of disabilities was error. This argument is unpersuasive because the WCJ based his finding on the "cervical impairment to the whole person" of Worker and, although the WCJ's finding does not

4

mention Worker's cervical myelopathy, the language of the finding encompasses the myelopathy, the stenosis, and the fusion surgery, none of which is specifically mentioned in the impairment finding language. We affirm the finding of the WCJ that Worker is entitled to a twenty-six percent whole-body impairment rating.

**APPORTIONMENT**

**{15}**    Under Section 52-1-47.1(A), "workers' compensation benefits shall be limited so that no worker receives more in total payments, including wages and benefits from his employer, by not working than by continuing to work." Accordingly, benefits shall be "reduced, if necessary, to account for any wages and employer-financed disability benefits a worker receives after the time of injury." *Id.* However, Section 52-1-47.1(A) "does not apply to . . . employee-financed disability benefits." *Id.* Thus, when a disability plan is financed by the worker, the worker's benefits cannot be reduced. *Id.*

**{16}**    In this case, Worker paid twenty percent of the disability premium, and Employer paid eighty percent. Our laws do not specifically address worker benefit reduction in situations in which a worker and employer share contributions to a disability plan. Nor has such a case been decided by a New Mexico appellate court. The WCJ ordered that Employer be credited only in proportion to the payments it made, without any credit for Worker's premium contribution. Employer contends that this credit was error. The issue before us is whether, under Section 52-1-47.1(A), an employer is entitled to full credit for disability benefits paid to a worker when the worker has paid a portion of the premium. We review this question of first impression de novo. *See Boradiansky*, 2007-NMSC-015, ¶ 5 (noting that questions of first impression in New Mexico are reviewed de novo).

**{17}**    Employer argues that Section 52-1-47.1(A) was specifically enacted to credit employers that pay for disability benefits for their workers by providing an offset for all the disability benefits received by the worker against the workers' compensation benefits that are to be paid by the employer. Furthermore, Employer argues that because Worker's compensation benefits were calculated based on her gross wages, and her gross wages do not reflect any reduction for her participation in Employer's disability benefit program, Worker is effectively being reimbursed for her participation in the program.

**{18}**    *Moya v. City of Albuquerque*, in which this Court interpreted Section 52-1-47.1, is instructive. 2007-NMCA-057, ¶¶ 9-13, 141 N.M. 617, 159 P.3d 266, *rev'd on other grounds* 2008-NMSC-004, 143 N.M. 258, 175 P.3d 926. In *Moya*, the at-injury employer received no offset under Section 52-1-47.1 for wages the worker received from a subsequent employer. 2007-NMCA-057, ¶ 18. We noted that, although wages from a subsequent employer are not among the enumerated exceptions from offset in Section 52-1-47.1(A), excluding wages from subsequent employers from offset is consistent with the statute's underlying policy of excluding from employer an offset of any payments received from sources independent of the at-injury employer. *Moya*, 2007-NMCA-057, ¶ 12. We determined in *Moya* that the statute's purpose was to give "an employer credit *only for*

5

*wages and benefits it alone has provided*" to a worker. *Id.* ¶ 13 (emphasis added).

**{19}** Limiting Employer's disability benefit offset only to the proportion of the benefit that corresponds to Employer's premium contribution is consistent with the rule in *Moya* that an employer's offset credits are limited to wages and benefits that the employer alone provides. *Id.* Additionally, unlike the subsequent employer's wages that were held to be exempt from offset under *Moya*, the statute specifically provides an exemption from employer offset for disability benefits paid for by the worker. *See* § 52-1-47.1(A). A reduction of the offset in accordance with the portion of the disability benefit paid for by Worker is consistent with this enumerated exception.

**{20}** We hold that Section 52-1-47.1(A) provides an offset only for the portion of disability benefits paid for by Employer's premium contributions. The percentage of disability benefits that correspond to Worker's premium contributions cannot be used by Employer to reduce Worker's benefits.

**CONCLUSION**

**{21}** The order of the WCJ is affirmed.

**{22} IT IS SO ORDERED**.

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Esckelson v. Miners' Colfax Med. Ctr.*, No. 32,815**

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**WORKERS' COMPENSATION**
Apportionment
Basis for Compensation
Course of Employment
Offset of Settlement

Rate of Compensation