**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2011-NMCA-051

Filing Date: April 4, 2011

Docket No. 29,537

FARMERS INSURANCE COMPANY
OF ARIZONA,

      Plaintiff-Appellee,

v.

CHRISTINE SANDOVAL
and MELISSA CARTER,

      Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Theresa M. Baca, District Judge

O'Brien & Ulibarri, P.C.
Daniel J. O'Brien
Albuquerque, NM

for Appellee

Whitener Law Firm, P.A.
Thomas M. Allison
Albuquerque, NM

for Appellants

OPINION

**WECHSLER, Judge.**

**{1}** In this appeal, we must determine whether an insurer is entitled to offset an injured insured's award of underinsured motorist (UIM) benefits by a tortfeasor's liability policy limits when the insured receives an amount less than policy limits due to a contractual exclusion for punitive damages. In light of the remedial purpose of NMSA 1978, Section 66-5-301 (1983), we conclude that the insurer's offset is limited to the amount of money

1

actually received by the insured from the tortfeasor. Accordingly, we reverse the judgment of the district court.

**BACKGROUND**

**{2}** The facts are undisputed. On March 19, 2006, Christine Sandoval and Melissa Carter (collectively, Defendants) were involved in an automobile accident with Shawna Chavez, who was driving while intoxicated. As a result of the accident, Sandoval incurred medical expenses in the amount of $2194.74, lost wages in the amount of $444.48, and pain and suffering. Carter incurred medical expenses in the amount of $2213, lost wages in the amount of $1000, and pain and suffering.

**{3}** Defendants sought compensatory and punitive damages from Mid-Century Insurance Company (Mid-Century), which insured Chavez's vehicle for liability coverage in the amount of $25,000 per person and $50,000 per accident. However, the Mid-Century policy explicitly excluded punitive damages from liability coverage. Because Defendants' compensatory damages are less than $25,000 each, it is anticipated that they will settle their claims against Mid-Century for an amount less than policy limits.

**{4}** Defendants filed a UIM claim against Farmers Insurance Company of Arizona (Farmers), which insured Carter's vehicle for $30,000 per person and $60,000 per accident. Defendants each sought $30,000 in punitive damages, alleging that Chavez was underinsured with respect to punitive damages. Farmers determined that Defendants were entitled to UIM benefits in the amount of $5000 each, which it calculated by offsetting the policy limits of Defendants' UIM coverage ($30,000) by the policy limits of the Mid-Century policy ($25,000). Defendants did not dispute that Farmers was entitled to an offset, but claimed that this offset must be based on the amount of money actually received by Defendants in settlement of their claims, rather than the liability limits of the Mid-Century policy.

**{5}** Farmers filed a declaratory judgment action in district court to determine the amount of its offset under Section 66-5-301 and the UIM policy. Farmers and Defendants each moved for summary judgment. The district court granted Farmers' motion and denied Defendants' motion. Defendants appeal, claiming that an insurer's offset is "limited to the amount of liability proceeds actually available to the injured insureds when that amount is less than the amount of [UIM] coverage."

**STANDARD OF REVIEW**

**{6}** "Summary judgment is proper when the material facts are undisputed and the only remaining issues are questions of law." *Bird v. State Farm Mut. Auto. Ins. Co.*, 2007-NMCA-088, ¶ 7, 142 N.M. 346, 165 P.3d 343. We review a district court's grant of summary judgment de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

**STATUTORY OFFSET**

**{7}** We begin our analysis with Section 66-5-301(B), which was "designed to expand insurance coverage to protect the public from damage or injury caused by other motorists who were not insured [or were underinsured] and could not make the impaired party whole." *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 15, 147 N.M. 678, 228 P.3d 462 (internal quotation marks and citation omitted). "Because we liberally interpret the statute in order to implement its remedial purpose, language in the statute that provides for an exception to uninsured coverage should be construed strictly to protect the insured." *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990) (citation omitted). "To that end, the only limitations on protection are those specifically set out in the statute itself: that the insured be legally entitled to recover damages and that the negligent driver be uninsured" or underinsured. *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985).

**{8}** Given the remedial purpose of the statute, our Supreme Court has held that "uninsured motorist coverage includes coverage for punitive damages." *Stewart v. State Farm Mut. Auto. Ins. Co.*, 104 N.M. 744, 746, 726 P.2d 1374, 1376 (1986). Punitive damages, which derive from actual damages, "'are as much a part of the potential award under the uninsured motorist statute as damages for bodily injury, and therefore they *cannot be contracted away.*'" *Manzanares v. Allstate Ins. Co.*, 2006-NMCA-104, ¶ 5, 140 N.M. 227, 141 P.3d 1281 (quoting *Stinbrink v. Farmers Ins. Co.*, 111 N.M. 179, 180, 803 P.2d 664, 665 (1990)). Accordingly, "an insured may recover punitive damages from his insurer if he would be legally entitled to recover them from the uninsured tortfeasor." *Stewart*, 104 N.M. at 747, 726 P.2d at 1377.

**{9}** However, the amount of punitive damages recovered through an insured's UIM carrier may not be commensurate with the amount of punitive damages for which a tortfeasor is liable. This is so because "the Legislature, in defining [a UIM], set the . . . maximum on the amount an insured can collect from his [UIM] carrier." *Schmick*, 103 N.M. at 222, 704 P.2d at 1098. Specifically, an insured's recovery is limited to the aggregate amount of uninsured motorist coverage purchased for the insured's benefit reduced by the statutory offset inherent in Section 66-5-301. *See Schmick*, 103 N.M. at 223, 704 P.2d at 1099; *Manzanares*, 2006-NMCA-104, ¶ 9 (holding that an insured cannot recover punitive damages in excess of UIM coverage minus the insurer's offset).

**{10}** In this case, we must determine the amount of Farmers' statutory offset. In *Schmick* and its progeny, the insureds actually received an amount equal to the liability limits of the tortfeasor and, therefore, the courts did not directly address the question before us. *See, e.g., Am. States Ins. Co. v. Frost*, 110 N.M. 188, 189, 793 P.2d 1341, 1342 (1990); *Fasulo v. State Farm Mut. Auto. Ins. Co.*, 108 N.M. 807, 808, 780 P.2d 633, 634 (1989); *Schmick*, 103 N.M. at 218, 704 P.2d at 1094; *State Farm Mut. Auto. Ins. Co. v. Jones*, 2006-NMCA-060, ¶ 2, 139 N.M. 558, 135 P.3d 1277; *Manzanares*, 2006-NMCA-104, ¶ 2; *Martinez v. Allstate Ins. Co.*, 1997-NMCA-100, ¶ 3, 124 N.M. 36, 946 P.2d 240. Accordingly, language in those

3

cases stating that an insurer's offset should be measured by the tortfeasor's "liability coverage" or, alternately, by the "liability proceeds" received by the insured, is not dispositive. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) ("The general rule is that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

{11}    Section 66-5-301(B) provides that "uninsured motorist coverage . . . shall include underinsured motorist coverage." Under the statute, an "underinsured motorist" is "an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's [UIM] coverage." *Id.* Farmers claims that the statute "creates and defines UIM insurance in terms of the tortfeasor's full liability coverage only," and, therefore, "UIM payments must be offset by the full liability limits of the tortfeasor's policy." Defendants respond that, to effectuate the remedial purpose of the statute, the insurer's offset must be limited to the amount of liability proceeds actually received by the insured.

{12}    Because it is unclear whether a valid contractual exclusion for punitive damages, such as the one at issue in this case, reduces the "limits of liability" under the tortfeasor's policy under Section 66-5-301(B), we consider the statute to be ambiguous. We thus turn to the purpose of the statute in order to discern the Legislature's intent. *See Wilson v. Denver*, 1998-NMSC-016, ¶ 36, 125 N.M. 308, 961 P.2d 153 ("In order to discern the intent of the Legislature when interpreting an ambiguous statute, we resort to well-accepted rules of statutory construction, always striving to select the rationale that most likely accomplishes the legislative purpose[,]or best fills a void not addressed by the Legislature." (internal quotation marks and citation omitted)).

{13}    As previously explained, the purpose of Section 66-5-301

> is to assure that, in the event of an accident with an underinsured vehicle, an insured motorist entitled to compensation will receive at least the sum certain in underinsurance coverage purchased for his or her benefit. To the extent the amount of other available insurance proceeds from responsible underinsured tortfeasors does not equal or exceed the amount of coverage purchased, the UIM carrier must satisfy the difference.

*Fasulo*, 108 N.M. at 811, 780 P.2d at 637. In this case, $30,000 in UIM coverage has been purchased for each Defendant's benefit. To assure that Defendants receive at least this sum certain in coverage, we conclude that Farmers' offset is limited to the amount of liability proceeds actually received by Defendants from Mid-Century.[1]

---

[1]We note that the amount of punitive damages to which Defendants are entitled has not yet been determined. For the purposes of this appeal, we assume that Defendants are

4

**{14}** We find support for our conclusion in *Gonzales v. Millers Casualty Insurance Co. of Texas*, 923 F.2d 1417 (10th Cir. 1991), and *State Farm Mutual Automobile Insurance Co. v. Valencia*, 120 N.M. 662, 905 P.2d 202 (Ct. App. 1995), which considered whether the UIM benefits of multiple claimants whose total damages exceeded the liability coverage of the tortfeasor's policy should be calculated based on the tortfeasor's policy limits, or the amount of liability proceeds actually received by the claimants. The Tenth Circuit Court of Appeals and this Court both concluded "that New Mexico's uninsured/underinsured motorist statute should be liberally construed to implement the purpose of the statute" and that "restricting an insured to the policy limits of the tort-feasor's liability coverage, 'rather than the liability proceeds actually available to a given insured [under his or her own policy] would tend to produce the illogical . . . situation the legislators sought to avoid.'" *Valencia*, 120 N.M. at 665, 905 P.2d at 205 (quoting *Gonzales*, 923 F.2d at 1422) (alterations in original). As a result,

> in multiple-claimant situations, insured motorists who are covered under an uninsured/underinsured motorist policy and who suffer from injuries resulting from an automobile accident are entitled to collect up to the limit of their underinsurance policy to the extent that their damages exceed the amounts that the tort-feasor's insurer has previously paid to them.

*Id.*

**{15}** In oral argument before this Court, Farmers argued that *Gonzales* and *Valencia* are factually distinguishable from this case because Defendants seek punitive damages, which "generally evoke less compelling concerns" than compensatory damages. *Manzanares*, 2006-NMCA-104, ¶ 10. In *Manzanares*, the plaintiff received a "total recovery of $60,000" for bodily injuries sustained in an automobile accident. *Id.* ¶ 2. The tortfeasors' policies excluded recovery for punitive damages and, therefore, the plaintiff submitted a claim to her own insurer for UIM benefits. *Id.* ¶¶ 2-3. The limit of the plaintiff's UIM coverage was $30,000, but the plaintiff argued that "the tortfeasors should be deemed 'uninsured' or 'partially uninsured' [rather than] 'underinsured'[] for purposes of punitive damages." *Id.* ¶¶ 3, 6.

**{16}** We rejected the plaintiff's invitation to draw a distinction between punitive damages and compensatory damages in *Manzanares*, noting that "New Mexico has characterized punitive damages as deriving from actual damages." *Id.* ¶ 5. Indeed, a claimant "is generally entitled to recover punitive damages under [the claimant's] UIM coverage" precisely "*because* they are a part of [the claimant's] bodily injury claim." *Id.* Accordingly, we held that the plaintiff's UIM carrier was entitled to an offset in the amount of $60,000,

---

entitled to recover at least $30,000 in punitive damages. *See Schmick*, 103 N.M. at 222, 704 P.2d at 1098 (noting that an insured cannot recover more than his total damages in UIM benefits).

5

regardless of whether the tortfeasors were uninsured or underinsured, or whether the tortfeasors' policies excluded payment for punitive damages. *Id.* ¶ 9. To the extent that the plaintiff asked this Court to create "a special exception" to the offset provisions for punitive damages, we rejected her claim. *Id.* ¶ 10. We observed that it would be "illogical to create a special rule that allows offset of UIM coverage for bodily injury damages, but does not allow offset for punitive damages," because "punitive damages generally evoke less compelling concerns." *Id.*

{17} Farmers' reliance on *Manzanares* does not translate to this case. In *Manzanares*, we expressly refused to distinguish between punitive damages and compensatory damages in the context of a UIM claim because punitive damages "stem from bodily injury damages." *Id*. Although we noted that "punitive damages generally evoke less compelling concerns[,]" we did so in response to the plaintiff's request to make a special exception to the offset provision for punitive damages only. *Id.* As in *Manzanares*, we refuse to formulate a special rule in this case simply because Defendants seek to recover punitive damages, rather than compensatory damages, under their UIM policy.

{18} Moreover, "[w]e must take care to avoid adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction." *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868 (internal quotation marks and citation omitted). If we were to construe Section 66-5-301 to permit an offset in the amount of a tortfeasor's policy limits, even though the injured insured recovered less than policy limits, it would lead to an anomalous result. Specifically, an injured insured would be entitled to a greater recovery if he or she was in an automobile accident with a totally uninsured driver, rather than an underinsured driver. "We doubt the [L]egislature intended such a result when it enacted the U[I]M statute, and we doubt that our case law interpreting the statute anticipated or would allow such an anomaly." *Jones*, 2006-NMCA-060, ¶ 29 (refusing to allow a UIM carrier a contractual offset because the injured insured would be entitled to a greater recovery if she had been hit by an uninsured driver, rather than an underinsured driver); *see Schmick*, 103 N.M. at 221, 704 P.2d at 1097 (declaring a contractual exclusion void because the injured insured would be entitled to a greater recovery of UIM benefits if she had been hit by an uninsured driver, rather than an underinsured driver). Accordingly, we decline to construe the statute in such an absurd manner.

**CONTRACTUAL OFFSET**

{19} Farmers next claims that it is entitled to a contractual offset in the amount of the tortfeasor's liability limits under the plain language of the UIM policy, which provides that "[t]he amount of [u]ninsured [m]otorist [c]overage we will pay . . . shall be reduced by the amount of any other bodily injury coverage available to any party held to be liable for the accident." (Emphasis omitted.) Farmers argues that $25,000 in liability coverage was "available" under the Mid-Century policy and, therefore, Defendants' UIM benefits may be reduced by this amount. Defendants respond that coverage for punitive damages was not

"available" under the Mid-Century policy, only coverage for compensatory damages. Alternatively, Defendants claim that the contractual offset is void because it violates the remedial legislative policy underlying Section 66-5-301.

**{20}** "Once uninsured motorist coverage is purchased, the insurance consumer is entitled to secure the full extent of the benefit which the law requires to be offered. Attempts by insurers to reduce this benefit by exclusion clauses are repugnant to the public policy of protecting persons injured in automobile accidents." *Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 2007-NMSC-015, ¶ 10, 141 N.M. 387, 156 P.3d 25 (internal quotation marks and citation omitted). Thus, contractual exclusions that conflict with the mandatory requirements of Section 66-5-301 are void. *Boradiansky*, 2007-NMSC-015, ¶ 10; *see Schmick*, 103 N.M. at 218, 704 P.2d at 1093 (holding that Section 66-5-301 "will be read into the [insurance] policies and, to the extent that the policy provisions conflict with the statute, the statute prevails").

**{21}** Under Section 66-5-301, an injured insured whose total damages exceed the liability proceeds received from the tortfeasor is entitled to recover the difference from the insured's UIM carrier, at least up to the limits of his UIM coverage. Accordingly, Farmers' contractual offset is void to the extent that it purports to limit Defendants' recovery of UIM benefits to an amount less than the limits of their UIM coverage ($30,000 each), minus an offset in the amount of the liability proceeds actually received by Defendants under the Mid-Century policy.

**CONCLUSION**

**{22}** We conclude that Farmers' offset is limited to the amount of liability proceeds actually received by Defendants under the Mid-Century policy. Accordingly, we reverse the judgment of the district court granting Farmers' motion for summary judgment.

**{23}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for *Farmers Ins. Co. of Ariz. v. Sandoval*, Docket No. 29,537**

| | |
|---|---|
| **AE** | **APPEAL AN ERROR** |
| AE-SR | Standard of Review |
| | |
| **IN** | **INSURANCE** |
| IN-ID | Insurance Code |
| IN-IC | Insurance Contract |
| IN-UM | Uninsured or Underinsured Motorist |
| | |
| **RE** | **REMEDIES** |
| RE-CO | Credits and Offsets |
| RE-ID | Indemnification |
| RE-PU | Punitive Damages |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |