MOORE, Judge,
concurring in the result.
Section 32-7-23, Ala.Code 1975 (“the Uninsured Motorist Act”), defines an “uninsured motor vehicle” to include
“motor vehicles with respect to which ... [t]he sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover.”
§ 32-7-23(b)(4). In this case, Jacqueline Brown and Cleo Brown received personal injuries as a result of a motor-vehicle accident caused by John Joseph Kramer, who was insured by USAA Casualty Insurance Company (“USAA”) under an automobile-liability-insurance policy providing for up to $200,000 in coverage for the accident at issue. The Browns sued Kramer in the Mobile Circuit Court (“the trial court”). Following a jury trial, the jury returned a verdict in favor of the Browns and against Kramer, awarding the Browns $80,000 in compensatory damages and $10,000 in punitive damages, and the trial court subsequently entered a judgment on the jury’s verdict. The USAA insurance policy excluded coverage for punitive damages, so USAA paid only $80,000 into court to satisfy the amount of the compensatory-damages award. The Browns maintain that Kramer had only $80,000 in liability coverage “available” to indemnify them for their damages, so Kramer should be considered uninsured for the $10,000 in punitive damages awarded by the jury.
In Farmers Insurance Co. of Arizona v. Sandoval, 149 N.M. 654, 253 P.3d 944 (N.M.Ct.App.2011), a driver and her passenger were injured in a collision with an intoxicated driver who was insured by an automobile-liability-insurance policy that excluded coverage for punitive damages. Their compensatory damages did not exceed the $25,000 per person limit of the intoxicated driver’s automobile-liability insurance, and they were prepared to settle their individual claims for less than that amount. The driver and the passenger filed a claim for únderinsured-motorist (“UIM”) benefits with the driver’s UIM insurance carrier, which provided UIM coverage limits of $30,000. The UIM carrier ¿greed to pay the driver and the passenger $5,000 each, representing its policy limits of $30,000 less the $25,000 policy limits of the intoxicated driver. The driver and the passenger asserted that, due to the intoxicated driver’s insurance-policy exclusion for punitive damages, the amount of UIM benefits should be calculated based on the amount the driver and the passenger actually received in their *298 respective settlements with, the intoxicated driver’s insurance company, not on the amount of the intoxicated driver’s policy limits. The UIM carrier filed a declaratory-judgment action to resolve the dispute; The trial court entered a-summary judgment- for the- UIM carrier, prompting an appeal by the driver and the passenger.
Oh appeal, the New Mexico Court of Appeals quoted the operative provision of the New Mexico Uninsured Motorist Act:
“[A]n ‘underinsured motorist’ is‘an'operator of a motor vehicle with respect to the ownership, maintenance or use of ■which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured’s [UIM] coverage.’, ”
149 N.M. at 657-58, 253 P.3d at 947-48 (quoting N.M, Stat. Ann., § 66-5-301(B)). The court determined that the statute did not clearly express whether a valid contractual provision excluding punitive damages reduces the “limits of liability,” Seizing on the ambiguity, the court held that the statute must be construed to effect the legislative intention of providing UIM cov-' erage at least in the certain sum for which the insured had contracted. The court ultimately held that the UIM carrier must pay the difference between its. UIM policy limits and the amounts actually payable under the .intoxicated driver’s automobile-liability-insurance policy given the exclusion for punitive damages. In reaching its decision, the court relied on New Mexico caselaw that requires a UIM carrier to pay punitive damages to .its insured when the insured is.legally entitled to recover those damages from the underinsured tortfeasor. See Stewart v. State Farm Mut. Auto. Ins. Co., 104 N.M. 744, 746, 726 P.2d 1374, 1376 (1986).
Like in New Mexico, in Alabama punitive damages are included in the amount the insured is “legally entitled to recover” under the Uninsured Motorist Act. See Omni Ins. Co. v. Foreman, 802 So.2d 195 (Ala.2001). Based on other similarities between Alabama law and New Mexico law on this subject, Alabama might even follow the reasoning of the New Mexico Court of Appeals in holding that a punitive-damages exclusion reduces the “sum of the limits of liability under all bodily injury liability -bonds and insurance policies available to an injured person after an accident,” § 32-7-23(b)(4), although that is debatable since a policy “exclusion” differs from a policy “limitation of liability.” See 17A Steven Plitt et al., Couch on Insurance § 254:72 (3d ed.). However, that reasoning does not avail the Browns in this case because, unlike in Sandoval, the punitive-damages exclusion in Kramer’s policy did not reduce the sums available to the Browns.
The record indicates that USAA offered to pay to the Browns the full $200,000 limits of its insurance policy covering Kramer in settlement of the Browns’ claims against Kramer. The Browns, in turn, notified their UIM carrier, State Farm Mutual Automobile Insurance Company (“State Farm”), of the settlement offer. State Farm, pursuant to Lambert v. State Farm Mutual Automobile Insurance Co., 576 So.2d 160 (Ala.1991), agreed to pay the Browns the $200,000 offered by USAA in order to secure its subrogation rights against Kramer. In doing so, State Farm substituted its fhnds for the $200,000 the Browns would have received in settlement from USAA, see State Farm Mut. Auto. Ins. Co. v. Pritchard, [Ms. 2130989, June 12, 2015) — So.3d —, —(Moore, J., dissenting), with the advance made pursuant to Lambert having “the same effect as a payment to [the insured] by the tortfeasor or the tortfea-sor’s liability carrier.” River Gas Corp. v. Sutton, 701 So.2d 35, 39 (Ala.Civ.App. *299 1997). The Browns were entitled to retain the entirety of that payment advanced pursuant to Lambert, even if the they later obtained a verdict .against Kramer for less than the amount of that payment. See Ronald G. Davenport, Alabama Automobile Insurance Law § 21:8 (3d ed.2002). Thus, through the Lambert procedure, the Browns received the entirety of the “sum of the limits of liability” contained in the USAA policy notwithstanding the punitive-damages exclusion, unlike the. situation in Sandoval.
That distinction leads to a different result in this case. The. purpose of the Uninsured Motorist Act is to assure that injured motorists have insurance coverage to indemnify them for damages caused by the wrongful conduct of uninsured and under-insured motorists. Star Freight, Inc. v. Sheffield, 587 So.2d 946, 957 (Ala.1991). Having received $200;000 from State Farm to cover their damages as a substitute for the settlement proceeds they would have received from the USAA policy covering Kramer, the Browns were' not entitled to any UIM benefits from State Farm unless they proved that their damages exceeded that $200,000 amount. See Pritchard, -So.3d at - (Moore, J., dissenting). It is undisputed that the jury. awarded the Browns only $90,000 in combined Compensatory and punitive damages, $110,000 less than' the payment advanced by State Farm pursuant to Lambert. Neither the letter nor the spirit of the Uninsured Motorist Act supports an additional awárd to the Browns of $10,000 from State Farm. By making an advance payment in accordance with Lambert, a UIM carrier assumes the risk that it may not be fully reimbursed by the tortfeasor’s liability-insurance carrier, see Davenport, supra, but it does not assume the risk that it will become obligated to pay the insured UIM benefits for damages for which the insured has already been fully indemnified. The trial court erred in entering a judgment for the Browns, and its judgment is due to be reversed; therefore I concur in the result reached by the main opinion.