The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: October 25, 2022

**No. A-1-CA-39107**

**CAROLYN C. CASTILLO,**

Plaintiff-Appellant,

v.

**ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY a/k/a ALLSTATE,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY
Cindy M. Mercer, District Judge**

Rios Law Firm, P.C.
Linda J. Rios
Michael G. Solon
Albuquerque, NM

for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Jennifer A. Noya
Sonya R. Burke
Dominic A. Martinez
Albuquerque, NM

for Appellee

**OPINION**

**MEDINA, Judge.**

{1}     An arbitration panel awarded Plaintiff Carolyn Castillo $425,000 following her claim against Allstate Property & Casualty Insurance Company (Allstate) for underinsured motorist benefits. The district court subsequently modified the award on Allstate's motion to vacate or modify, reducing it to $275,000. Castillo appeals the district court's final judgment as well as its denial of her motion to reconsider modification of the award. Castillo argues that (1) her 2011 Polaris Ranger RZR (the RZR, pronounced "razor") is considered a vehicle under the New Mexico Mandatory Financial Responsibility Act (MFRA), NMSA 1978, §§ 66-5-201 to -239 (1955, as amended through 2016); (2) her policy insuring the RZR should be reformed because Allstate failed to offer uninsured/underinsured motorist (UM/UIM) coverage on the off-road vehicle policy for the RZR and obtain affirmative rejection of such coverage in violation of New Mexico law; and (3) Allstate waived the application of the New Mexico statutory offset per the language of Castillo's automobile insurance policy.

{2}     Upon review of application of the Off-Highway Motor Vehicle Act (OHMVA), NMSA 1978, §§ 66-3-1001 to -1021 (1975, as amended through 2017) to the circumstances of this case, this Court holds that Castillo's RZR is not subject to the MFRA because it is an off-highway motor vehicle only operated on the highway for the purpose of crossing. As such, Allstate was not required to offer

UM/UIM coverage or obtain a signed coverage rejection for the policy insuring Castillo's RZR. We also hold that the district court correctly found that Castillo's recovery from the tortfeasor's insurer should be taken from the applicable policy limits as opposed to the award made by the arbitration panel. We therefore affirm.

**BACKGROUND**

{3}     In 2013, Castillo was involved in an auto collision while operating a 2011 Ford F250. At the time of the collision, Castillo had one automobile policy and one off-road vehicle policy with Allstate. The automobile policy insured three vehicles, including the Ford F250, and included $100,000 in UM/UIM coverage per person per vehicle. Regarding damages for injury sustained in a motor vehicle accident, the automobile policy stated the following:

In Part 5, Uninsured Motorists Insurance-Coverage:

. . . .

1.     "[E]ach person" is the maximum that *we* will pay for damages arising out of *bodily injury* to one person in any one *motor vehicle* accident. . . . [I]f two or more autos are insured for this coverage as shown on the Policy Declarations, the maximum *we* will pay to one person for damages arising out of *bodily injury* to one person . . . is the sum of the "each person" limits.

. . . .

Regardless of whether limits of two or more insured autos may be stacked:
1.     Damages payable will be reduced by . . . all amounts paid by the owner or operator of the uninsured *auto* or anyone else responsible.

2

Castillo's off-road vehicle policy insured her RZR. Neither the disclosures nor the terms of the off-road vehicle policy reflected that it included UM/UIM coverage.

{4}     Following the collision, Castillo filed a complaint against the responsible party, an underinsured motorist, and Allstate. Castillo settled with the responsible party for $25,000. Castillo's claim against Allstate proceeded to arbitration, and the arbitration panel awarded Castillo damages in the amount of $425,000. Allstate moved to either vacate any award in excess of $275,000 or modify the award to limit it to $275,000 to comport with the terms of Castillo's automobile insurance policy. Allstate argued that the plain language of Castillo's policy limited her recovery to $300,000 and that her maximum recovery was offset by the $25,000 she had already received from the responsible party, therefore limiting Castillo's recovery to $275,000. Castillo responded that the automobile insurance policy and the off-road vehicle policy should be stacked, entitling her to $400,000 of UM/UIM coverage. Castillo also argued that the award of $425,000 reflected her maximum coverage and the settlement of $25,000 from the responsible party.

{5}     The district court granted Allstate's motion, finding that Castillo's available UM/UIM coverage was $300,000, that the off-road vehicle policy did not provide additional UM/UIM coverage, and that the $25,000 paid by the responsible party applied to reduce Castillo's maximum available coverage. The district court therefore modified the arbitration award to $275,000.

3

**{6}** Castillo filed a motion to reconsider, arguing that Allstate was required to offer and obtain an affirmative rejection of UM/UIM coverage on her RZR under the MFRA. Castillo also filed an affidavit stating that she used the RZR both on-road and off-road, that the RZR was registered for on-road and off-road use, and that it was not unusual for her to drive the RZR to the store if she needed something while working on her property.

**{7}** The district court denied Castillo's motion to reconsider, stating that it did not find the evidence or authority cited in Castillo's motion persuasive. The district court found that its previous ruling was correct and affirmed that any arbitration award in excess of $275,000 must be vacated, and subsequently entered a final judgment awarding Castillo $275,000. This appeal followed.

**DISCUSSION**

**I.      Standard of Review**

**{8}** Whether Castillo's RZR is considered a motor vehicle for the purposes of the MFRA "presents an issue of statutory construction, which is a question of law that [appellate courts review] de novo." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 10, 309 P.3d 1047. Castillo's challenge to the statutory offset presents us with a question of contract interpretation, which we also review de novo. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803.

4

{9} We review the district court's decision to vacate or modify an arbitration award for substantial evidence. *See Medina v. Found. Rsrv. Ins. Co.*, 1997-NMSC-027, ¶ 12, 123 N.M. 380, 940 P.2d 1175. "Substantial evidence is that evidence which is relevant and which a reasonable mind could accept as adequate to support a conclusion." *Id.* To the extent we must review the district court's denial of Castillo's motion to reconsider, "[w]e review . . . for an abuse of discretion." *Nance v. L.J. Dolloff Assocs.*, 2006-NMCA-012, ¶ 23, 138 N.M. 851, 126 P.3d 1215. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted).

**II.     Castillo's RZR Is Not Subject to the Coverage Requirements of the MFRA**

{10} Castillo argues that the RZR is subject to the insurance mandate of the MFRA for various reasons. She contends that the term "motor vehicle" as used in the MFRA refers to self-propelled vehicles that can legally be driven on public roads, streets, or highways. She asserts that because the RZR is capable of being legally driven on public roads, it falls under the purview of Section 66-5-205.3(B). *See id.* (requiring motor vehicle insurance policies to insure persons against loss from liability imposed by damages arising out of the use of a motor vehicle that the insured person does not own). Castillo further argues that her RZR is licensed to be operated on public

roadways, is specifically designed to carry people and property, and that she used the RZR for that purpose.

{11} Allstate responds: (1) the MFRA only applies to motor vehicles operated on the streets or highways of New Mexico, and such motor vehicles do not include special mobile equipment; and (2) special mobile equipment refers to vehicles not designed or used primarily for the transportation of persons or property and incidentally operated or moved over highways. Allstate argues Castillo's RZR should be considered special mobile equipment because Castillo's affidavit reflects that her RZR is only driven on public roads incidentally, and because photos of the RZR reflect that it is designed for off-road, recreational use. Allstate also contends that the RZR is considered an off-highway motor vehicle under the OHMVA and that Castillo was not authorized to operate the RZR on-road under the OHMVA. Allstate argues that, accordingly, the RZR is an off-highway vehicle that is not subject to the MFRA.

{12} We begin by examining and construing the MFRA. "In interpreting . . . a statute, our primary purpose is to give effect to the Legislature's intent." *Rutherford v. Chaves Cnty.*, 2003-NMSC-010, ¶ 11, 133 N.M. 756, 69 P.3d 1199. The statute, or statutes, whose construction is in question are to "be read in connection with other statutes concerning the same subject matter." *Quantum Corp. v. N.M. Tax'n & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848.

6

{13}    "When construing the legislative intent behind [the MFRA, our appellate courts] . . . appl[y] a 'qualitatively different analysis' than we use when construing many other types of statutes and insurance policies." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 15, 149 N.M. 162, 245 P.3d 1214 (internal quotation marks and citation omitted). "Because we liberally interpret the statute in order to implement its remedial purpose, language in the statute that provides for an exception to uninsured coverage should be construed strictly to protect the insured." *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 6, 111 N.M. 154, 803 P.2d 243 (citation omitted). "To that end, the only limitations on protection are those specifically set out in the statute itself: that the insured be legally entitled to recover damages and that the negligent driver be uninsured or underinsured." *Farmers Ins. Co. of Ariz. v. Sandoval*, 2011-NMCA-051, ¶ 7, 149 N.M. 654, 253 P.3d 944 (internal quotation marks and citation omitted).

{14}    The MFRA requires insurance companies doing business in New Mexico to offer UM/UIM coverage as part of their motor vehicle insurance policies. *See* § 66-5-205.3(B). The MFRA also specifies that certain motor vehicles are exempt from the UM/UIM coverage requirement, including (1) "an implement of husbandry or special mobile equipment that is only incidentally operated on a highway"; or (2) "a motor vehicle operated upon on a highway only for the purpose of crossing such highway from one property to another." Section 66-5-207(B), (C).

{15}     The MFRA does not define "motor vehicle" or "special mobile equipment," so we turn to the general definitions of these terms in the Motor Vehicle Code. The Motor Vehicle Code defines "motor vehicle" as "every vehicle that is self-propelled and every vehicle that is propelled by electric power obtained from batteries or from overhead trolley wires, but not operated upon rails; but [excluding special mobile equipment] for the purposes of the [MFRA]." NMSA 1978, § 66-1-4.11(H) (2015). It defines "special mobile equipment" as "a vehicle not designed or used primarily for the transportation of persons or property and incidentally operated or moved over the highways, including but not limited to farm tractors, road construction or maintenance machinery, ditch-digging apparatus, well-boring apparatus and concrete mixers." NMSA 1978, § 66-1-4.16(K) (2019). Additionally, it defines "off-highway motor vehicle" as "any motor vehicle operated or used exclusively off the highways of this state and that is not legally equipped for operation on the highways of this state." Section 66-1-4.13(B) (2021).

{16}     The OHMVA addresses registration and use of off-highway motor vehicles and also defines "off-highway motor vehicle," so we turn to that statute next. *See Moongate Water Co. v. City of Las Cruces*, 2014-NMCA-075, ¶ 15, 329 P.3d 727 (stating that "when two statutes deal with the same subject, one general and one specific, the specific statute controls"). The OHMVA defines an "off-highway motor vehicle" as "a motor vehicle designed by the manufacturer for operation exclusively

off the highway or road,"[1] including a "recreational off-highway vehicle" which is a motor vehicle "designed for travel on four or more non-highway tires, for recreational use by one or more persons." Section 66-3-1001.1(E)(4). The OHMVA is clear that "[a] person shall not operate an off-highway motor vehicle on . . . any limited access highway or freeway at any time." Section 66-3-1011(A)(1). An off-highway motor vehicle also cannot ordinarily operate on paved streets and can only do so under limited circumstances. Section 66-3-1011(A)(2). Off-highway motor vehicles can cross paved streets (not including limited access highways or freeways) only when they can do so safely and must cross in the most direct manner possible. *See* § 66-3-1011(B). Thus, the OHMVA and the Motor Vehicle Code as a whole contemplate that off-highway motor vehicles will ordinarily not be operated on paved roads or highways. *See* § 66-1-4.13(B).

{17}   The plain language of the Motor Vehicle Code differentiates "off-highway motor vehicles" from "special mobile equipment." Castillo's RZR appears to fit the definition of "motor vehicle," but not "special mobile equipment." "Special mobile equipment" refers to heavy machinery and construction equipment and vehicles not designed for personal transport. Section 66-1-4.16(K) (2019). Conversely, the RZR is not heavy machinery or construction equipment and rather is equipped primarily

---

[1]While this definition differs slightly from the definition in the Motor Vehicle Code, the differences in the two definitions are slight and do not affect our analysis.

for the transport of persons. Therefore, we must next determine whether Castillo's motor vehicle is an "off-highway motor vehicle" because although Castillo's RZR may be a motor vehicle, it may still be exempt from the MFRA because it may only be lawfully operated on highways or paved roads for the purpose of crossing. *See* § 66-5-207(C).

{18}    While our record lacks exact specifications for the RZR, the photo of the RZR we have available reflects that it contains four tires and is designed for off-road use.

{19}    Castillo argues that her RZR must be a motor vehicle subject to the insurance requirements of the MFRA because it is licensed. However, Castillo's RZR is only registered and not licensed for paved-road use. The Motor Vehicle Code requires all off-highway motor vehicles to be registered and have a certificate of title unless they fall under certain exemptions, none of which applies to Castillo's RZR. *See* NMSA 1978, § 66-3-1(A) (2018); *see also* § 66-3-1(A)(11) (discussing certain exemptions); § 66-3-1005 (same). All off-highway motor vehicles are required to display a registration decal. 18.15.3.13(A) NMAC. Any off-highway motor vehicle that operates on a paved road in compliance with the provision of Section 66-3-1011 must display a special paved road use vehicle plate. 18.15.3.13(E) NMAC. Castillo's registration does not reflect that she was issued this special paved-road-use vehicle plate, but rather that she was issued the standard registration decal.

**{20}**      Additionally, an off-highway motor vehicle may only be lawfully operated on certain paved streets or highways if several requirements are met, including, as relevant here, that the vehicle has certain safety features and that a local ordinance or resolution authorizes such use. Section 66-3-1011(C). Castillo has not established that her RZR has the safety features required for on-road use. Castillo's affidavit states that she uses the RZR on- and off-road and that it is "not unusual" for her to drive the RZR to Walmart while working on her property. The affidavit does not specify whether Castillo drives on the road to go to Walmart, does not list what safety features the RZR contains, and at best establishes the RZR is only driven on-road on limited occasions. Further, neither Belen, where Castillo lives nor Los Lunas, where Castillo asserts she has driven her RZR, have passed an ordinance permitting on-road use of off-highway motor vehicles. *See generally* Belen, N.M., Code of Ordinances, tit. 10, ch. 10.04, § 10.04.087D (2005, amended 2022) (prohibiting off-highway motor vehicles from operating on streets or highways except for the purpose of crossing); *see generally* Los Lunas, N.M., Code of Ordinances, tit. 10, ch. 10.04 (1988, amended 2022) (addressing vehicles and traffic and not specifically addressing off-highway motor vehicles).

**{21}**      Because Castillo's RZR is primarily intended for off-road use and is not licensed or equipped for on-road use, it is "a motor vehicle operated upon a highway only for the purpose of crossing such highway from one property to another" for the

purposes of the MFRA. Section 66-5-207(C). We therefore hold that the RZR is exempt from the MFRA, and, as such, Allstate was not required to offer UM/UIM coverage on the policy insuring Castillo's RZR. We now address the district court's modification of Castillo's arbitration award.

**III.    The District Court Did Not Err in Reducing Castillo's Arbitration Award**

{22}    Castillo argues that her policy specifies that the offset is not taken from the limits of coverage, but from the damages incurred by the policyholder. She contends that the word "damages" is distinct from "coverage," arguing that the use of "damages" implies that the offset requirements of New Mexico law do not apply. Allstate responds that the plain language of the policy dictates that the maximum Allstate will pay is the sum of the "each person" limits, which here is $300,000. Allstate argues that the policy's use of the phrase "damages payable" does not refer to the amount awarded by the arbitration panel because New Mexico case law establishes that the offset for any recovery from the tortfeasor is taken from the maximum policy limits as opposed to a damages award.

{23}    When interpreting a contract, "we view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651. "The purpose, meaning, and intent of the parties to a contract is to be deduced from the language employed by them;

12

and where such language is not ambiguous, it is conclusive." *Benz*, 2013-NMCA-111, ¶ 31 (alteration, internal quotation marks, and citation omitted).

{24}     Castillo's automobile insurance policy states, "[I]f two or more *autos* are insured for this coverage as shown on the Policy Declarations, the maximum *we* will pay one person for damages arising out of *bodily injury* to one person . . . is the sum of the 'each person' limits." It further states, "[D]amages payable will be reduced by . . . all amounts paid by the owner or operator of the uninsured *auto* or anyone else responsible." Castillo's policy reflects that she insured three automobiles, each covered for up to $100,000 in damages. Therefore, the plain language of Castillo's policy reflects that she may recover up to $300,000 from Allstate for damages sustained from bodily injury for a single accident, but that her recovery will be reduced by any sum paid to Castillo by the responsible party. In New Mexico, an insurer may offset its claim payment by the amount of liability proceeds actually received by the insured from the tortfeasor. *See Manzanares v. Allstate Ins. Co.*, 2006-NMCA-104, ¶ 9, 140 N.M. 227, 141 P.3d 1281; *Sandoval*, 2011-NMCA-051, ¶ 13. Here, Castillo received $25,000 from the responsible party, entitling Allstate to reduce her claim payment by $25,000 per the terms of her policy.

{25}     As such, the arbitration panel's award of $425,000 in compensatory damages exceeded Castillo's policy limits. *See Stewart v. State Farm Mut. Auto. Ins. Co.*, 1986-NMSC-073, ¶ 18, 104 N.M. 744, 726 P.2d 1374 (reducing award of damages

13

by an arbitration panel to conform to the limit of the insured's policy). Therefore, the district court's modification of Castillo's arbitration award to comply with the terms of her policy was supported by substantial evidence, and the district court did not abuse its discretion in denying Castillo's motion to reconsider.

**CONCLUSION**

{26}    For the foregoing reasons, we affirm.

{27}    **IT IS SO ORDERED.**

_____
**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**ZACHARY A. IVES, Judge**